## VOLUME 59,

### AND

## New York State Reporter,

## VOLUME 93.

---

(42 App. Div. 270.)

### CROWN COTTON MILLS v. TURNER.

(Supreme Court, Appellate Division, Second Department. July 1, 1899.)

TRIAL—TAKING CASE FROM JURY.

In an action to recover the value of goods alleged to have been consigned to third parties on defendant's credit, although the course of dealing between the parties, so far as evidenced by letters and telegrams between plaintiff and defendant, showed a consistent, continuous course in harmony with defendant's liability as assumed by him in letters under which such dealings began, yet when there is other evidence showing that the course of dealings had been changed, and such third parties had requested plaintiff to ship the goods in question on their credit alone, but in defendant's name, to protect them against creditors, and that plaintiff assented thereto, though such assent is denied, it is error to take the case from the jury and direct a verdict for plaintiff.

Appeal from trial term, Kings county.

Action by the Crown Cotton Mills against J. Spencer Turner. From a judgment for plaintiff entered on the verdict of a jury directed by the court, defendant appeals. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

James McKeen, for appellant.

Howard A. Taylor (Albert S. Bard and Wolcott P. Robbins, on the brief), for respondent.

HATCH, J. The averments of the complaint present this case in two aspects: The first allegation is that the plaintiff, at the special instance and request of the defendant, consigned to the defendant cer-

59 N.Y.S.--1

tain merchandise for sale for the account of the plaintiff; setting forth the character of the merchandise, and its value. The complaint then avers that the defendant sold the goods, and received the proceeds of sale, but has not paid over the same, except in an amount specified. It then avers that the plaintiff has demanded a return of the goods, or, if sold, either in whole or in part, that the defendant render an account of such sale. The effect of the subsequent allegations is that defendant refused to return the goods or their proceeds, and denied receipt of the same, or any liability therefor; and, on account of the facts, plaintiff demands judgment for the value of the goods. The complaint states with more particularity the steps taken by the plaintiff, and the acts done, than was necessary, but nevertheless constituted a good pleading, and authorized a recovery for the value of the goods, based upon a sale of the same, or, if sold, and the proceeds received, as and for money had and received to the plaintiff's use. There is no inconsistency in the respective claims. The answer was a general denial; also, an affirmative allegation of other matter. Whether the latter averments constituted a good defense to the action, or only operated as a denial, as claimed by the plaintiff, is presently unimportant, as it is conceded that whatever evidence inured to the defendant as a defense was competent to be received under the denial. These, then, are the issues between the parties; and upon such issues we are to apply the evidence, and find if it required the submission of any material question to the jury for settlement by their verdict.

The plaintiff is a manufacturer of cotton cloth at Dalton, in the state of Georgia. The defendant is a mill owner and commission merchant dealing in cotton goods in the city of New York. Two brothers of the defendant were engaged in a similar commission business in the city of Chicago, and had been for some years, under the firm name of Turner Bros. & Co. The defendant was not a member of the firm, and had no interest in such business. Turner Bros. & Co. had dealt with the plaintiff for a number of years, receiving their goods, selling them on commission, and remitting the proceeds, and also, from time to time, making advances upon the goods shipped before sale. The trade of this company was in Chicago and the Western states. About the 15th of September, 1894, Turner Bros. & Co. became embarrassed in business, and notified the plaintiff of such fact. Desiring to continue their business, they requested an arrangement by which the goods of the plaintiff could be handled by the defendant through them. Pursuant to this proposal, the defendant, under date of September 20, 1894, wrote plaintiff the following letter:

"J. Spencer Turner, No. 109 Duane Street.

"New York, Sept. 20, 1894.

"Crown Cotton Mills, Dalton, Ga.—Gentlemen: As you have probably already learned, Turner Brothers & Co. (Chicago) have been unfortunate in the conduct of their business, but I hope that their affairs will soon be adjusted, and they may be able to resume their business as before. Meanwhile, any unfilled orders which you may have from them, or any they may send you for execution, I wish you would promptly execute, and send the invoices to me, and I will take care of them, charging out the goods myself. This arrangement will cover any business transacted until matters are adjusted.

"Yours, truly,          J. Spencer Turner, per H."

Before this letter was received, the plaintiff wrote the defendant in respect to the matter of the proposal; notifying the defendant of a shipment to him pursuant thereto, and asking particulars respecting the course of business to be followed. Under date of September 26, 1894, the defendant again wrote as follows:

"J. Spencer Turner, No. 109 Duane Street.

"New York, Sept. 26, 1894.

"Crown Cotton Mills, Dalton, Ga.—Gentlemen: As I wrote you some days ago, I wish to help Turner Brothers and Co. in their affairs, and therefore requested you to fill their orders, sending invoices to me to be cared for. I trust this will be satisfactory, and that they will continue their business as in the past. I am not doing this for profit to myself, but simply to aid Turner Brothers, and hold their business together until they can resume.

"Yours, truly,  J. Spencer Turner, per H."

Pursuant to this authority, the plaintiff shipped goods to the defendant at Chicago. The goods were received by Turner Bros. & Co. by virtue of their arrangement with the defendant, and were sold by them; they remitting the proceeds to the plaintiff, and after a time making advances thereon. In like manner goods were shipped direct from the plaintiff to various points in different parts of the West in the name of the defendant, and the proceeds collected and returned through Turner Bros. & Co. In each instance invoices of shipments in either form were sent to the defendant, in New York. During this period the plaintiff shipped goods to New York, upon the defendant's order, with which Turner Bros. & Co. had nothing to do. The method of dealing above outlined continued without comment or change, except as hereafter noted, until January 14, 1895, when the following telegrams were sent, and letters written:

"New York, January 14, 1895.

"To Crown Cotton Mills, Dalton: Cancel orders of last year. Make no shipment for present.  J. Spencer Turner."

"J. Spencer Turner, No. 109 Duane Street.

"New York, Jan. 14, 1895.

"Crown Cotton Mills, Dalton, Ga.—Gentlemen: I have your letter of the 8th, and note contents. I have wired you, and now confirm, 'Cancel all orders of last year, and make no shipments for the present.' At the prices quoted, I can do nothing with the goods, and it is useless for me to try to handle them. Should any change occur, I will communicate with you again.

"Yours, truly,  J. Spencer Turner, per H."

"Dalton, Ga., Jan'y 14, 1895.

"To J. Spencer Turner, New York: Your telegram received. Do you mean to ship nothing on Turner Bros. & Co. orders? Answer.

"Crown Cotton Mills."

"New York, Jan'y 15, 1895.

"To Crown Cotton Mills, Dalton: Cancel only orders for New York. Complete Turner Brothers & Company orders.  J. Spencer Turner."

"J. Spencer Turner, No. 109 Duane Street.

"New York, Jan. 15, 1895.

"Crown Cotton Mills, Dalton, Ga.—Dear Sir: I inclose you herewith sales to Jan. 1; also, my check for $374.48, amount of net proceeds. Your night message came in this morning, and I replied that my telegram of yesterday applied only to orders sent you for shipment here, and that you are to complete the orders given you by Turner Bros. & Co.

"Yours, truly,  J. Spencer Turner, per H."

Thereafter the plaintiff continued to ship as before until about February, 1897, when Turner Bros. & Co. made default in remittance of proceeds; and, shortly after, demand was made upon the defendant, and he repudiated liability. At this time there were 275 bales of goods for which payment had not been fully made, and for which this action is brought. At the close of the proof the court directed a verdict for the plaintiff for the balance unpaid.

It is not disputed but that the defendant, for some period of time, became liable to the plaintiff for the goods shipped to him, and sold by Turner Bros. & Co. It is claimed, however, that this was a temporary arrangement, from which the defendant was not expected to derive profit, and that he in fact derived no advantage therefrom, that the evidence warranted a finding that the occasion for such liability had ceased, and that in fact the plaintiff dealt solely upon the responsibility of Turner Bros. & Co. Whether the arrangement by which the defendant assumed liability was for his profit or not is of no consequence. So far as the plaintiff acted upon it, by the delivery of goods, liability attached in measure the same as though it were highly profitable to the defendant. The character of the contract was such as to render the defendant liable for the goods delivered to Turner Bros. & Co., and they are to be treated as his agents in the transaction. If the first bale of goods shipped by the plaintiff to Turner Bros. & Co. pursuant to the engagement which the defendant made had been sold by them, and not paid for, can there be doubt but that the defendant would have been liable for the value of such bale? Certainly not. His letter said, in effect, "You ship to me at Chicago, and I will receive, sell, and remit the proceeds to you." The fact that the sale was to be there made by a known agent does not affect the question, any more than it would if no agent was to intervene, or one was subsequently selected for the purpose. The defendant was notified of the transaction, and, upon elementary principles, his liability therefor became perfect. Nor is this conclusion changed by any name which the parties called the transaction. It was called a "guaranty," but there was more than the intent of a guaranty. It was a contract by which two parties agreed, the one to consign goods, and the other to receive them as consignee, and sell the same, and remit the proceeds. This being the contract, there could be no change in liability unless there was change in the relation. It is evident that the contract, in its inception, was expected to be temporary. It sought to make an arrangement whereby Turner Bros. & Co. might adjust their affairs and resume business. We have, therefore, to consider whether such time ever arrived, or whether a time did arrive when Turner Bros. & Co. became the responsible parties, and plaintiff dealt with them in such relation. If there was no other proof in the case than the letters which were admittedly written and received by the respective parties, the orders which were given, and the course of dealing, we should have no difficulty in upholding the judgment of the court below. We should not be precluded from reaching such conclusion, based upon the telegram of January 14, 1895, of J. Spencer Turner, to cease shipments. We do not think that the effect of the correspondence in this regard placed any limitation whatever upon the liability of the defendant.

When he sent the telegram he did not intend that it should at all apply to the orders or dealings between the plaintiff and himself through Turner Bros. & Co.    It had relation solely to his own personal dealings with the plaintiff, and in no sense operated as a limitation of his liability, as it was not so intended or so understood.    If the letters and telegrams which passed between the parties were subject to such a construction, nevertheless the subsequent course of dealing between the parties, the shipment of goods in the name of the defendant, and the rendition to him of bills of lading therefor, would operate as proof conclusive that the word "complete," as used in the telegram, was not intended as a word of limitation.    A finding of such fact would be against the overwhelming weight of the testimony, and may not now obtain to defeat the defendant's liability.

If this were all there was of the case, we should have no difficulty; but notwithstanding the fact that the course of dealing between the parties, so far as its written evidence is concerned, showed a consistent, continuous course in harmony with the liability of the defendant as assumed by him in the letter under which such dealing began, yet there is testimony in the case from which we think the jury might have found a change in the course of dealing, by which the original debtor for the proceeds of the goods shipped became transferred from the defendant to Turner Bros. & Co.    While it is true that Turner Bros. & Co. never in fact resumed business as they had conducted it prior to becoming embarrassed, and while it must be admitted that they at no time thereafter had a bank account in their own name, or a place of business of which they held the lease, nevertheless it does appear that after December, 1894, they began to make advances upon the goods received from the plaintiff as they had theretofore done.    It is true that these advances were taken from the funds in the bank account of the defendant, and the written direction thereafter given by Turner Bros. & Co. showed that they still continued to deal in the name of the defendant; yet it must be taken as established that, in a sense, they had resumed the conduct of their business in a manner similar to that pursued prior to their embarrassment.    These facts, standing alone, would not be sufficient to exonerate the defendant from liability.    But in this connection it was testified by E. H. Turner that in December of 1894 he informed the plaintiff that he had settled with his creditors, giving for his indebtedness notes at specified periods, and that Turner Bros. & Co. would then be prepared to continue business as of old, and make the usual advances.    While, as we have before observed, this testimony would not be sufficient to overcome the written evidence of the continued course of dealing, and the declaration of Turner Bros. & Co. therein, yet it was supplemented by testimony in which E. H. Turner testified that in January, 1896, he had a conversation with the president of the plaintiff, in which, in substance, he stated to him that he wished him to discontinue shipping goods in the name of the defendant, as he (the president) knew that the defendant had no interest therein, and that the dealings must be understood as being with Turner Bros. & Co., and not with the defendant, to which arrangement he claimed the plaintiff assented, upon the understanding that the name of the defendant, while thereafter

to be used, was only to be used as a protection of the goods of the
plaintiff against the creditors of Turner Bros. & Co., and not as creat-
ing liability against the defendant by reason of such shipment.    In a
substantial manner, this testimony is corroborated by that of the ste-
nographer of Turner Bros. & Co.    While this testimony is denied by
the plaintiff's president, and is, in one view, contradicted by the subse-
quent dealings between the parties, yet we think it was of sufficient
probative force to require the submission of the question to the jury
as to whether, after such time, plaintiff shipped its goods to Turner
Bros. & Co. as its agents, and not upon the responsibility of the de-
fendant.    We are quite aware that this oral testimony was in neces-
sary conflict with the course of business dealings, and with at least
one order for goods made by Turner Bros. & Co. after that time.    But
the dealings and orders which were given were not so far inconsistent
or improbable with the understanding which was claimed to have been
had with Turner Bros. & Co. as that the court can say, as matter of
law, that no such arrangement was ever made, or that the court would
be called upon to set aside a verdict in harmony with such under-
standing; and this question, we think, became one of fact for the jury.
The liability for which this action is brought arose subsequent to this
claimed conversation, and, if the arrangement was then made by which
the charge for goods thereafter shipped should have been made to
Turner Bros. & Co., then no liability exists against this defendant.
Nor can this rule be changed by treating the action as one solely for
money had and received.    While we are of opinion that the bank ac-
count which was authorized to be opened by the defendant in his
name by Turner Bros. & Co. is, in law, to be treated as the bank ac-
count of the defendant, yet we think that the money, the proceeds of
these goods, which went into this bank account, cannot, as matter
of law, be treated as money had and received to the use of defendant,
unless it be shown that he received the benefits therefrom, or exercised
such control over the same as that the act of withdrawal may be
said to have been the defendant's act.    The existence of this bank ac-
count, and the theory of the action, as for money had and received,
are inseparably connected with the primary transaction out of which
the obligation arose; and if the agreement and understanding were
that the goods should be shipped to Turner Bros. & Co. as the agents
of the plaintiff, although in the name of the defendant, then the de-
fendant could no more be charged with the proceeds of the sales of
such goods, because they were deposited in the bank account of the
defendant, than he could recover of any other person into whose ac-
count such moneys were deposited, unless it be accompanied with the
further fact that the person in whose account such moneys were de-
posited received benefit therefrom, either in whole or in part, or
exercised control over them.    Trust Co. v. Gleason, 77 N. Y. 400.    As
we have before observed, such question is inseparable from the char-
acter of the transaction.    If these goods were sold by Turner Bros.
& Co. as the agents of the plaintiff, as the jury would be authorized to
find, then it follows that for the proceeds of those goods Turner Bros.
& Co. were alone liable.    If they converted such proceeds to their own
use, then, of course, no liability could attach to any other person.    If

they deposited them in the account of a third party, then such third party could only be made liable upon the fact that he thereafter received the benefits of such deposit, or directed its disposition. But, if Turner Bros. & Co. subsequently repossessed themselves of such moneys, then, certainly, within the authority we have cited, no liability could attach to the owner of the bank account in which they were temporarily placed. The defendant in this case occupies no other or different position, although it be conceded that the bank account was his, and that the moneys, for a time, were deposited therein. If subsequently the principal debtors, Turner Bros. & Co., withdrew such funds and appropriated them to their own use, then the defendant never received any benefit therefrom, and no liability attached therefor. No theory of agency existing in Turner Bros. & Co. to use this bank account can avail to change this rule. The whole controversy therefore comes to rest upon the character of the original transaction. If the goods were shipped to the defendant as the agent of the plaintiff, then he is liable for the proceeds of such goods upon either theory,—of value, or for money had and received. If the goods were shipped to Turner Bros. & Co. as the agents of the plaintiff, then they alone become liable, and the defendant is exempted from liability, unless it be shown that he in some manner, either in whole or in part, benefited by the reception of such moneys, or assumed to control the same. Upon the evidence, therefore, we are constrained to hold that an issue was raised in this regard, and the defendant became entitled to have such question submitted as one of fact to the jury, in accordance with his proper request made therefor. It follows that the judgment should be reversed, and a new trial granted.

Judgment reversed, and new trial granted. Costs to abide the event. All concur.