The bill of complaint in this case was filed to compel the specific performance of an alleged oral agreement to make a will in favor of the complainant. The suit was originally begun against Ruth Walsh Richards, individually and as executrix deson tort of the estate of Cecil Richards, deceased. Subsequently, the clerk in Chancery was appointed the administrator ad litem and was named as an additional party defendant. Both defendants deny the material allegations of the bill and seek a decree based on a counter-claim for $5,000 deposited in a safe deposit box rented from the Sussex County Trust Company in the joint names of the complainant and the decedent.
Complainant contends that upon the death of her husband in 1933, she was the sole beneficiary under his will, and *Page 581 
became the owner of a hotel and tavern business in the Borough of Franklin, Sussex County; that between March 8th, 1933, and May 26th, 1934, she and her son, Cecil Richards, the decedent, entered into an agreement whereby the complainant agreed to permit Cecil Richards to manage the business for her and to keep for himself the net proceeds thereof in consideration of his promise to devise and bequeath all his estate to the complainant as sole beneficiary in the event that he predeceased her.
The evidence disclosed that on May 26th, 1934, the decedent executed a will leaving his entire estate to the complainant and that on October 1st, 1943, he executed another will revoking the first and leaving his entire estate to his wife, Ruth Walsh Richards, the defendant, subject to a life estate whereby his mother, the complainant, was to be paid $10 per month during her lifetime.
Equity will enforce such an agreement at the suit of one who has completely performed his part if the agreement be sufficiently proved and established. See Johnson v. Hubbell,10 N.J. Eq. 332; Lings v. Urquhart, 106 N.J. Eq. 506;
affirmed, 109 N.J. Eq. 131; Hendershot v. Hendershot, 135 N.J. Eq. 232.
Parol agreements of this character, however, are subject to close scrutiny. They are permitted to stand only when established by evidence that is cogent, clear and convincing, leaving no doubt with respect to their actual making and existence. Burdick v. Grimshaw, 113 N.J. Eq. 591 and cases cited therein.
The only evidence produced by the complainant with respect to the making of the agreement is conflicting and contradictory. Complainant's daughter, Sarah, testified that the agreement consisted of the decedent's promise to leave his entire estate to the complainant in return for her promise that the decedent should manage the business and receive all the income therefrom. However, Sarah's husband, James Money-penny, testified that the agreement consisted of the decedent's promise to leave his estate to his mother: that he would maintain her during her lifetime and deliver over all the income from the business to her if she permitted him to operate the business. *Page 582 
Evidence of this kind does not meet the standard of proof which is required in these cases. It is not so clear, cogent and convincing as to leave no doubt with respect to the making and existence of the alleged parol agreement which complainant seeks to enforce.
Moreover, the consideration for the agreement, assuming there was one, was tainted with illegality. The liquor license which was used in the conduct of the business was issued to the complainant. Evidence was produced to show that the license was so issued because the decedent was ineligible as a licensee for the reason that he had been convicted of a crime. In Lachow v.Alper, 130 N.J. Eq. 588, the court said that the statute "R.S.33:1-26 discloses a clear legislative intent that licensees should hold their licenses free from any device which would subject the licenses to the control of other persons." Certainly a grant of the right to operate a liquor business by a licensee and to take all the profits therefrom is a device which subjects the privilege conferred by the license to a stranger and is contrary to public policy.
I am convinced from the evidence that the complainant was not the owner of the business which she claims to have permitted her son to manage. She asserted that the ownership thereof came to her under the will of her husband who died in 1933. The complainant was the executrix of her husband's estate. As such she filed an inheritance tax report in which she did not list the business or the contents of the hotel as an asset of her husband's estate. This is strong evidence against her contention of ownership. Her solicitor objected to the admission in evidence of the inheritance tax report. Such objection is without merit. The statute upon which he relies to exclude such evidence (R.S.54:33-8) pertains to the returns made by appraisers and all data otherwise gathered by the State Tax Commissioner. This statute should be read in the light of R.S. 54:34-9 which states, in part, as follows:
"The appraiser shall make report thereof to the state tax commissioner, together with such other facts in relation thereto as the state tax commissioner may by order require." *Page 583 
The "data otherwise gathered by the state tax commissioner," stated in R.S. 54:33-8, refers to "such other facts in relation thereto as the state tax commissioner may by order require," as stated in R.S. 54:34-9. An inheritance tax report submitted by the personal representative of a decedent is not in that category of privileged communications which is set forth in R.S.54:33-8.
The testimony of an officer of the Sussex County Trust Company established that Cecil Richards, the decedent, rented a safe deposit box from that institution on May 9th, 1942, in the joint names of himself and the complainant. One entry only was made to the box. The decedent made this entry and consequently placed the $5,000 found therein after his death. Complainant admits that she did not put the money in the safe deposit box and does not claim that the money was originally hers.
The mere fact that the safe deposit box was rented in the joint names of the decedent and complainant does not operate to give the survivor property rights in the contents of the box. All that can be deduced from the way in which the box was rented is that it was the intention of the parties that either might qualify himself or herself to have access to the box. It does not determine the ownership of the contents of the box or justify the conclusion that there existed a joint ownership with a right of survivorship in the property contained therein. See101 A.L.R. 832. I conclude, therefore, that the contents of the safe deposit box is the property of the personal representative of the decedent's estate.
I am also of the opinion that the complainant should account for her use and occupation of the premises during the pendency of these proceedings. If the parties cannot agree on an amount, I shall order the taking of additional proofs in order that final relief may be granted.
I shall advise an order in accordance with the views above expressed. *Page 584