90 N.J. Super. 530 (1966)
218 A.2d 422
HARRY ZABOTINSKY, PLAINTIFF,
v.
CEIL CONKLIN, DEFENDANT.
IN THE MATTER OF THE PROBATE OF THE ALLEGED WILL OF ANN SHORTELL.
Superior Court of New Jersey, Chancery Division.
Decided March 18, 1966.
*532 Mr. Martin Klughaupt, attorney for plaintiff.
Mr. Joseph J. Cappa and Mr. Carmine Vigorito, attorneys for defendant.
MATTHEWS, J.S.C.
This action was instituted by plaintiff Harry Zabotinsky seeking specific performance of a written contract under which he and decedent Ann Shortell agreed to execute reciprocal, nonrevocable wills. The specific performance action was consolidated with an action pending in the Passaic County Court, Probate Division, which sought to probate a paper writing purported to be the last will of Ann Shortell.
The testimony adduced at trial raises little dispute as to the facts existing in this matter. For a period in excess of 20 years prior to the date of her death, plaintiff and decedent resided together as husband and wife, although plaintiff had a living wife from whom he was not divorced. Plaintiff's wife and he had separated voluntarily more than 20 years ago, and plaintiff states that he has not seen her since. During the month of August 1954 plaintiff purchased certain real property, consisting of a house and lot in the City of Paterson, Passaic County, and placed title thereof in decedent's name. Thereafter, during the month of April 1960, plaintiff contracted to purchase an additional parcel of property, also consisting of a house and lot, in the same municipality. On the occasion of this purchase he and decedent conferred with an *533 attorney-at-law of this State and, as a result of the conference, the attorney was directed, at the request of plaintiff and decedent, to arrange to have title to the premises then to be purchased taken in decedent's name, and further, to prepare reciprocal wills for plaintiff and decedent under which each would inherit the estate of the other without the possibility of the families of either interfering with the testamentary scheme. Pursuant to these instructions, counsel prepared substantially identical wills for plaintiff and decedent under which each devised and bequeathed all of his or her property to the survivor of the two. In addition, he prepared a written agreement of even date with the wills, whereby plaintiff and decedent each agreed to execute simultaneously therewith a will which would not be changed or altered during the lifetime of the other without written consent. The wills and the contract were executed, and thereupon title to the second premises was taken in the name of the decedent.
On December 13, 1964 decedent was at the home of her sister, defendant Ceil Conklin, together with various other members of her family. Decedent was a widow and childless. During the course of the early evening decedent suddenly asked her sister for a piece of paper and a pen, declaring that she desired to write her will. There was only an envelope available. Taking the envelope, she wrote out a simple will on its face, and requested her niece and brother, who were present at the time, to witness the same. They did. This document is the paper that was offered for probate in the County Court action.
Approximately three hours after the execution of the writing just described, decedent was taken to Beth Israel Hospital in Passaic. She remained in the hospital until January 4, 1965, on which date she died, the cause of death stated on the death certificate being carcinoma of the bladder.
At her death decedent was possessed of some items of personal property and the two above-mentioned parcels of real property, known as 451 Eleventh Avenue and 447-449 Eleventh Avenue, Paterson.
*534 Initially, plaintiff seeks to enjoin the probate of the paper writing of December 13, 1964, which is alleged to be the last will of Ann Shortell. In the alternative he demands, if the writing is admitted to probate, that a trust be impressed for his benefit upon the estate of the decedent, both real and personal, in enforcement of the afore-mentioned agreement.
The testimony of the witnesses to the writing, the date of which has been fixed as December 13, 1964, satisfies me that the formalities of our Wills Act were observed at the time of its execution and, accordingly, that the writing should be admitted to probate as the last will of Ann Shortell. The fact that plaintiff seeks to enforce an agreement providing for reciprocal wills entered into by decedent and him does not bar the probate of this document; nor is probate to be denied if plaintiff's contention is sustained. See Minogue v. Lipman, 28 N.J. Super. 330 (App. Div. 1953); Tooker v. Vreeland, 92 N.J. Eq. 340, 342 (Ch. 1921), affirmed sub nom. Tooker v. Maple, 93 N.J. Eq. 224 (E. & A. 1921).
In opposing the claim for specific performance defendant argues that the contract sought to be enforced is unenforceable because of lack of consideration, and further, that considering the relationship which existed between plaintiff and decedent during her lifetime, enforcement should be disallowed as contrary to public policy.
Dealing first with the contention of lack of consideration, it is apparent that the authorities relied upon by defendant are not applicable to the factual situation before this court. There is no dispute but that a contract under which the parties thereto obligated each other to make reciprocal wills must be supported by consideration. However, the cases such as White v. Risdon, 140 N.J. Eq. 613 (Ch. 1947); Young v. Young, 45 N.J. Eq. 27 (Ch. 1889), and Duvale v. Duvale, 54 N.J. Eq. 581 (Ch. 1896), and other cases referred to, do not involve factual situations wherein the parties agreed to execute mutually reciprocal wills which were irrevocable during a lifetime of the other without consent.
*535 The controlling law in such circumstances is found in the oft-celebrated decision of Vice-Chancellor Backes in Tooker v. Vreeland, supra. There, a husband and wife entered into an oral agreement under which each agreed to dispose of their combined estates in the manner which they mutually agreed upon and which was set forth in mutual wills. In enforcing the agreement which had been violated by the wife after the death of her husband, the vice-chancellor observed:
"The law is well settled, and the proposition is not questioned, that if Mr. and Mrs. Tooker made a compact to dispose of their combined estates, the terms of which find expression in the mutual wills, the contract will be enforced in equity according to its established practice. * * *
That such a contract be enforceable it must be, like all other contracts specifically enforceable in equity, founded upon a valid consideration, certain and defined, equal and fair, and sufficiently proven * * *." (92 N.J. Eq., at p. 342)
After reviewing the testimony adduced before him and which, in his judgment, satisfied him of the existence of the agreement contended for, the vice-chancellor then stated:
"From this testimony, the truth of which is not challenged, it seems to me to be clearly and satisfactorily established that the wills grew out of, not simply the mutual desire of an aged and affectionate couple to gratify the other's wishes, but a solemn promise, an agreement  a contract  to be performed by the survivor. The consideration of the contract we readily find in the inducement held out by the one to the other to mutually testate, in the reciprocal gifts of the life estates, and the principal, if necessary, and the execution of the contract on the part of Mr. Tooker, by his unrevoked will at the time of his death. * * *
The disparity in the amounts of the estates involved does not militate against the conclusion I have come to that the mutual wills were the outcome of a contract. Equality of consideration is not essential to a binding obligation." (Ibid., at p. 345; emphasis added)
In the matter sub judice it is found that each of the parties to the agreement of April 18, 1960 covenanted to execute specifically identifiable wills which were in fact executed, and under which each agreed to leave his or her entire estate to the other; furthermore, each agreed that he or she would *536 not revoke that specific will without the consent of the other while the other party lived. The proof at trial established that plaintiff never revoked the will he executed pursuant to the agreement, and, in fact, that will exists to this present date. He has therefore fulfilled his part of the bargain. Without question, each party received a benefit under the agreement in the covenant of the other to will all of his or her property to the survivor. Each suffered the detriment of foregoing the right which each unquestionably had under the law, to revoke his or her will at any time. Thus, consideration flowed to each party in both directions under the agreement. This, in my judgment, is sufficient to support the enforcement of the agreement in question. Beyond this consideration however, the facts disclose without question, that plaintiff paid for the properties in question at the time of the purchase of each, and also maintained them, paying mortgages, taxes, water rents, insurance and repairs exclusively, and that decedent occupied one of them, rent-free for many years.
Some confusion seems to exist in this area of the law because many of our older cases have, on occasion, indiscriminately referred to cases involving contracts to make a will, involving the will of only one party thereto, with those situations where reciprocal wills are involved. An example of this misconception is found in the argument of counsel in this action. In those situations involving but a single will, the observations of Justice Dixon in Eggers v. Anderson, 63 N.J. Eq. 264 (E. & A. 1901) are appropos:
"From this mutability of wills it follows that if the whole scope of any arrangement is fulfilled by the mere making of a will, then nothing legally binding upon him who signs the instrument is contemplated, the obligatory force of a contract is not intended, and he remains at liberty to change his mind. The claims that a legal obligation is assumed must be supported by something beyond the consent to make a will." (at p. 267)
A discussion of this distinction may be found in 5 New Jersey Practice (Clapp, Wills and Administration), § 21, p. 72 et seq.
*537 Defendant also argues that I must consider the physical circumstances of the parties to this agreement in determining its validity. It is pointed out that unlawful cohabitation is an illegal consideration which cannot uphold the contract here at issue. The contract, she contends, is permeated with illegality and objectionable as contrary to public morals. In support of this position defendant cites such authorities as Richards v. Richards, 141 N.J. Eq. 579 (Ch. 1948); Drennan v. Douglas, 102 Ill. 341, 40 Am. Rep. 595 (Sup. Ct. 1882), and Yeiser v. Rogers, 19 N.J. 284 (1955). All of the cases cited by defendant have the same infirmity as those which she cited in support of her argument of failure of consideration when we consider the facts at hand. In Richards the court refused to enforce a promise to make a will for want of valid consideration, because the consideration there involved was an arrangement under which decedent was permitted to manage a hotel and tavern under his name, when in actuality the arrangement had been procured by plaintiff who, as the real party in interest, was ineligible to hold a liquor license because of conviction for crime. The arrangement was a bald attempt to contravene the law and, therefore, a clear violation of public policy.
In Drennan the consideration for the promise to make a will was extra-marital sexual intercourse.
In Yeiser v. Rogers, where plaintiffs sought to impress a trust on the estate of the decedent, relief was not allowed, since the court found that title had been placed in the name of decedent by plaintiff for the purpose of defrauding future creditors, primarily the Federal Government.
In each of these cases just referred to, the consideration supporting the alleged agreement to bequeath or devise was an illegal activity. The very compact sought to be enforced had its genesis in illegal conduct. Here, to the contrary, the relationship between the decedent and plaintiff, assuming it to be meretricious, was but incidental and actually irrelevant to the agreement in question. Perhaps it might be said that the agreement came about because the parties *538 lived together. It is not for a secular court to judge whether this relationship was sinful or not. What the law is interested in, under these circumstances, is whether a relationship illegal or contrary to public policy is so inextricably bound with the engagement under consideration so as to taint it fatally. While it might be said that the agreement here in question arose because of the actual relationships between decedent and plaintiff, I must regard that fact as coincidental and, in any event, irrelevant, since there is nothing to show that the agreement in question looks to that relationship to support its validity or existence.
Seeking to analogize plaintiff's status to that of Yeiser, in Yeiser v. Rogers, defendant also argues that plaintiff, in placing the properties which he purchased in the name of the decedent, sought to defraud his estranged wife of any rights therein. The absurdity of this argument is best answered by the observation that the wife, upon enforcement of the agreement, will have an inchoate dower interest in the properties in question, which is the most she could have obtained if plaintiff had taken the title in his name in the first place.
Plaintiff also seeks an order directing defendant to turn over to him two diamond rings which were the property of decedent, and which are in the possession of defendant. Defendant claims that the rings were given to her by her sister on December 13, 1964, shortly after the execution of the will and prior to decedent's entry into the hospital. There is nothing in the record to refute the testimony as to the gift. The testimony of the witness, who was a co-occupant of the semi-private hospital room with decedent, I find to be unconvincing. Plaintiff's demand for the return of the rings is, accordingly, denied.
I will sign a judgment admitting to probate as her last will the paper writing of Ann Shortell, the date of which has been established as December 13, 1964. Since there is no appointment of an executor thereunder, I name plaintiff as executor to serve on bond of $1,000. I have appointed plaintiff in this capacity, since the record discloses that he has paid all the *539 debts of decedent's estate, including medical and funeral bills. In addition, the judgment will provide that the assets of decedent's estate, both real and personal, after the payment of debts and taxes, are impressed with a trust in favor of plaintiff in specific enforcement of the contract entered into between decedent and him on April 18, 1960.
No costs to any party.