104 N.J. Super. 586 (1969)
250 A.2d 775
J. ALBERT WOLL AND VIRGINIA WOLL, EXECUTRIX OF THE ESTATE OF WILLARD WOLL, DECEASED, PLAINTIFFS,
v.
MATTHEW DUGAS, AN INFANT, BY HIS GUARDIAN AD LITEM JOHN D. MORRISON, GRAHAM C. DUGAS, JR., JANE DUGAS FROJEN, AMERICAN CANCER SOCIETY, CITIZENS FIRST NATIONAL BANK OF RIDGEWOOD, NEW JERSEY, AS EXECUTOR AND TRUSTEE OF THE WILL OF CELEONOR E. WOLL, (KNOWN ALSO AS ELEANOR WOLL), DECEASED, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided February 6, 1969.
*589 Mr. Walter H. Jones, attorney for plaintiffs.
Mr. John D. Morrison, pro se, guardian ad litem for infant defendant Matthew Dugas.
Mr. Harry Schaffer, attorney for defendants Graham C. Dugas, Jr. and Jane Frojen.
Mr. Roger Hinds, attorney for defendant American Cancer Society.
Mr. Milton T. Lasher, attorney for defendant Citizens First National Bank of Ridgewood.
LORA, J.S.C.
This is an action for specific performance of an agreement allegedly made on November 4, 1949 between Matthew Woll and his wife, Celeonor Woll, both deceased, to execute identical, mutual, reciprocal and irrevocable wills. Plaintiffs J. Albert Woll and Virginia Woll, executrix of the estate of Willard Woll, deceased, contend that pursuant to said agreement Matthew and Celeonor Woll were to leave to the survivor of them his or her estate, and upon *590 the death of the survivor the entire estate would pass to Albert and Willard Woll, the sons of Matthew and the stepsons of Celeonor Woll.
Plaintiffs further seek to impress a trust for their benefit upon the assets of the estate of Celeonor Woll now in the hands of defendant Citizens First National Bank of Ridgewood, the executor of her estate. Additionally, plaintiffs seek an accounting of the assets of the estate from defendant bank and their appointment as executors of the estate of Celeonor Woll.
[The court reviewed the proofs and found that the agreement to execute mutual and irrevocable wills was established by clear and convincing evidence.]
There was adduced at the trial certain testimony from plaintiff J. Albert Woll, the admissibility of which was objected to by all defendants.
Evidence Rule 63(32), entitled "Trustworthy Statements Made in Good Faith by Declarants Unavailable Because of Death," provides:
"Subject to Rule 64, in a civil proceeding, a statement made by a person unavailable as a witness because of his death is admissible if the statement was made in good faith, upon the personal knowledge of the declarant, and there is a probability from the circumstances that the statement is trustworthy."
While this court is not aware of any New Jersey case construing the rule, there is some sentiment to be found in the cases decided prior to its adoption favoring less rigid rules of evidence.
By way of dictum, Rule 503 of the Model Code of Evidence, which is more liberal than Evidence Rule 63(32), was discussed with approval by Judge Clapp in In re Spiegelglass, 48 N.J. Super. 265, 273 (App. Div. 1958). In re Petagno, 24 N.J. Misc. 279, 286, 48 A.2d 909 (Ch. 1946), urged the adoption by our courts of Rule 503, but since no objection was made to the evidence in question, such evidence was held admissible without the aid of that rule.
*591 The late Chief Justice Vanderbilt, in his concurring opinion in Robertson v. Hackensack Trust Co., 1 N.J. 304, 315, at p. 320 (1949), wrote favorably of Rule 503. His persuasive opinion, wherein he suggested that declarations of decedents should generally be admissible, was referred to in a later case but rejected as not being the law of the then controlling decisions and of the Robertson majority on the evidential question there presented. See Allen v. Gidney, 18 N.J. Super. 63, 65 (App. Div. 1952).
The most prophetic statement found is that made by the Chief Justice in Robertson (at p. 319): "At the very least, we may safely adopt the Massachusetts rule, encompassing as it does all necessary safeguards required for the reception of evidence of this type."
It is this court's considered opinion that Evidence Rule 63(32) should be applied literally. The rule is not so broad as it might appear to be in that the "safeguards" of the Massachusetts statute of which Chief Justice Vanderbilt spoke are even stronger here. And a comparison with Rule 503 of the Model Code reveals the greater breadth of that provision. See also Sullivan v. Dumaine, 106 N.H. 102, 205 A.2d 848 (Sup. Ct. 1964), where the Vanderbilt opinion in Robertson and Evidence Rule 63(32) are favorably cited. The only criteria for admissibility under Evidence Rule 63 (32) are the unavailability of the witness because of death, the good faith of the statement, personal knowledge of the declarant, and a probability from the circumstances that the statement is trustworthy.
Albert Woll testified that in the early 1950s, while at Miami Beach, his father told him that he had made a will in which he had left everything to Pat (his wife Celeonor's nickname) but that he did not want Albert or Willard to think that he had done this because of any lack of love or affection for them; rather, he had done so because he had received a promise from Pat, and they had agreed, that if he made a will leaving everything to her, she would make a will leaving everything to "the boys," meaning Albert and *592 Willard, and further, that ultimately they would be carrying out his wish of having the property. Albert further testified that on that occasion his father told him that pursuant to the agreement he had reached with Pat, he had made a will and Pat had made a will; that in his will he left everything to Pat and in her will she left everything to him; that if he preceded Pat in death all his property was to go to them under Pat's will, and if Pat predeceased him the property was to go to the boys under his will  in other words, if he died his property would go to the boys under Pat's will and if Pat died the property would go to them under the father's will.
I find that this statement regarding the agreement for the wills was made by Matthew Woll to his son Albert in good faith and upon his personal knowledge. And the circumstances, that is, a father's explanation to his son of the apparent disinheritance, attests to its trustworthiness and meets the probability requirement set forth in Evidence Rule 63(32).
Parenthetically, the court also notes that at the trial some objection was raised as to certain statements testified to by the attorney Markewich as having been made to him by decedent Matthew Woll over the telephone on November 3, 1949, which was the day before the Wolls went to Markewich's office to discuss and execute the wills. Specifically, the basic objection was to the attorney's testimony that during the telephone conversation Woll advised him that he and his wife had made an agreement to dispose of their estates and the manner in which they had agreed to do so. But Evidence Rule 63(32) and Ervesun v. Bank of New York, etc., 99 N.J. Super. 162 (App. Div. 1968), certification denied 51 N.J. 394 (1968), are dispositive of this objection, the necessary criteria being present and there being no privilege. Additionally, the statements aforesaid conceivably would be admissible under Evidence Rule 63(12), which provides, in pertinent part, that:
*593 "A statement is admissible if it was made in good faith and it (a) described the declarant's then existing state of mind, emotion, or physical sensation, including statements of intent, plan, motive, design, mental feeling, pain and bodily health, but not including memory or belief, to prove the fact remembered or believed, when such a mental or physical condition is in issue or is relevant to prove or explain acts or conduct of the declarant * * *."
See the comments in the Report of the New Jersey Supreme Court Committee on Evidence (March 1963), page 173, regarding the admissibility of a statement of intention on the part of a testator as to a future testamentary disposition.
However, it might be argued Evidence Rule 63(32) does not permit the admission of a statement made by a decedent as to what a third person told him unless within the comprehension of Evidence Rule 66, "Included Hearsay." It would follow that Albert Woll's testimony set forth above would, to some extent, constitute a violation of the hearsay rule despite Evidence Rules 63(32) and 66, at least insofar as Celeonor's reported statements regarding the agreement are concerned, because of the double hearsay involved. The implication of Evidence Rule 66 is to this effect, since the inherently included statement of Celeonor itself does not appear to meet the requirements of an exception to Evidence Rule 63. In any event, I do not find it necessary to consider, this testimony in reaching my conclusions.
Be that as it may, I find that some two or three weeks before Matthew Woll died and while he was at the New York Hospital, Matthew Woll stated to Albert in the joint presence of Albert and his wife Celeonor Woll that "while I have told you this before, I want you to hear it again while Pat is here; Pat and I have agreed that upon our deaths you and Willard should have all the property we own and pursuant to that agreement I have made a will leaving everything to Pat and she has made a will leaving everything to me." Matthew Woll then turned to his wife Pat and asked her if what he had just told Albert was correct, and Pat stated that it was and she so reiterated during the said hospital visit. Furthermore, I find that on that occasion Celeonor turned *594 to Albert and told him that she had agreed with her husband, when he made the will leaving everything to her, that she would leave everything to Willard and Albert. She went on to say that they had made mutual wills to carry out their agreement.
Predicated upon the findings of fact made above, it is the court's conclusion that Matthew Woll and Celeonor, his wife, made an irrevocable compact to dispose of their combined estates and that the terms of this agreement found expression in their mutual wills. The court further finds that the aforesaid agreement has been established by evidence that is cogent, clear and convincing, and which has left no doubt in the court's mind as to the parties actually having entered into such an agreement. Gromek v. Gidzela, 36 N.J. Super. 212, 217-218 (App. Div. 1955); Tooker v. Vreeland, 92 N.J. Eq. 340 (Ch. 1921), affirmed o.b. Tooker v. Maple, 93 N.J. Eq. 224 (E. & A. 1921). As was stated in Tooker, "the agreement between the parties was founded upon a valid consideration, certain and defined, equal and fair, and sufficiently proven."
Defendants further contend that the wills having been executed in the State of New York and the parties having been residents therein at that time, New York law governs the alleged agreement with respect to its nature, validity, obligation and interpretation. The question for decision is whether New Jersey or New York law applies in this case. This issue must be resolved by the application of the conflict of laws rules of New Jersey, the forum state. In re Damato, 86 N.J. Super. 107, 115 (App. Div. 1965).
Defendants argue that since the essential validity of a contract made in New York is here in question, New York law must apply. See e.g., Staedler v. Staedler, 6 N.J. 380 (1953); Avery v. Sielcken-Schwarz, 5 N.J. Super. 195, 199 (App. Div. 1949).
Recent cases cast doubt, however, on the strict applicability of lex loci in all situations. In Kievit v. Loyal Protect. Life Ins. Co., 34 N.J. 475 (1961), plaintiff, a New Jersey resident, *595 brought an action in New Jersey to recover on an accident policy written by a Massachusetts insurance company. While the question of whether New Jersey or Massachusetts law applied was presented to the court, Justice Jacobs found it unnecessary to decide the question, finding that under the law of either state plaintiff would recover. The Appellate Division of the Superior Court had previously reversed judgment for plaintiff, basing its decision on applicability of Massachusetts law. Commenting on this, Justice Jacobs stated:
"Under the circumstances it may not realistically or fairly be said that the local insured and the company both contracted with the Massachusetts law in mind and it would be not only unjust to the local insured but also contrary to the true interests of our State to deny to him the benefits of the favorable local law. In recent years there has been increased awareness of the unwisdom of rigid application of the traditional conflict of laws doctrines in the field of contracts and steps have been taken towards giving greater recognition to the local law of the state with which the contract had its most significant relationship." (at p. 492)
Kievit was cited in a later insurance case, Mt. Vernon Fire Ins. Co. v. Gillian, 95 N.J. Super. 279, 281 (App. Div. 1967), in connection with a discussion of the "most significant contacts" or "center of gravity test" doctrine of conflict of laws. While, as pointed out in Gillian, these theories have not as yet been expressly adopted in New Jersey by an appellate court with respect to contract actions, the above cases which discussed the test with approval in a contract situation indicate a definite trend in that direction.
Our courts have expressly adopted these conflicts theories in cases involving tort actions. In Mellk v. Sarahson, 49 N.J. 226 (1967), it was stated:
"* * * where a foreign state has no real interest in having its law applied to a particular right or liability of parties to an event which occurred within its borders, a mechanical application of a disability or immunity imposed by the lex loci delicti may work an unjust result having no relation to the purposes and policies behind the foreign law." (at p. 229)
*596 See also Franco v. Davis, 51 N.J. 237, 239 (1968); Maffatone v. Woodson, 99 N.J. Super. 559, 561-562 (App. Div. 1968).
The present case demonstrates the wisdom of the warnings of Kievit and Mellk concerning the rigid application of the traditional concepts of conflict of laws. Here defendants contend the alleged agreement between Matthew and Celeonor Woll was entered into in New York in 1949. It cannot be said, however, that there is any clear indication that the couple contemplated the application of New York law, for in 1949, while they maintained an apartment in New York City, they were also residing and entertaining in a recently completed fine home in Upper Saddle River, New Jersey. The only significant contact with the State of New York was the drafting of the wills by a New York lawyer, the recital of New York residence therein, and the signing of the wills in New York. The testimony does not reveal where the agreement was conceived or actually made, and there are many other contacts with New Jersey. When Matthew Woll died in 1956, Celeonor became a permanent resident of New Jersey, occupying the Upper Saddle River home until her death in 1967, a period of more than ten years. Celeonor, in New Jersey, referred to and reaffirmed her agreement with Matthew after his death. She died a resident of New Jersey and her last will and testament was admitted to probate in New Jersey. Furthermore, not one party to the present proceeding is a resident of New York.
Defendants further contend that under New York law the agreement between Matthew and Celeonor Woll is absolutely void by virtue of the Personal Property Law, McKinney's Consol. Laws, c. 41, § 31, subsec. 7, which provides:
"Agreements required to be in writing. Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking;

* * * * * * * *
*597 7. Is a contract to bequeath property or make a testamentary provision of any kind; * * *."
Whether such a statute of frauds is applicable is often predicated upon whether it is deemed procedural or substantive. See 4 Williston, Contracts (3d ed., Jaeger, 1961), § 599 p. 261 et seq. In Rubin v. Irving Trust Co., 305 N.Y. 288, 113 N.E.2d 424 (Ct. App. 1953), the court, commenting on the above-quoted statute, did not decide that it was solely procedural or substantive, saying that "the statute may even be regarded as having a dual nature  both substantive and procedural." 113 N.E.2d, at p. 427. That case involved the making of a contract to make testamentary dispositions by two New York domiciliaries while in Florida where such contracts were valid. The New York court applied its own statute.
Rubin does provide an insight into the nature of the statute in question:
"[W]e need not decide whether the statute is substantive or procedural. * * * If it be the former, we must conclude that it is expressive of a deeply rooted policy of the forum with respect to the bequeathing of property or making testamentary provisions by its domiciliaries to which the ordinary rules of choice of law and comity must give way." (at p. 427; emphasis supplied)
The New York court quoted at length from the opinion of Justice Holmes in Emery v. Burbank, 163 Mass. 326, 39 N.E. 1026, 28 L.R.A. 57 (Sup. Jud. Ct. 1895), where a similar contract was made in Maine by residents of that state who later moved to Massachusetts. Under Maine law the contract was valid, while under Massachusetts law it was not. Justice Holmes applied the Massachusetts law, stating:
"If the policy of Massachusetts makes void an oral contract of this sort made within the state, the same policy forbids that Massachusetts testators should be sued here upon such contract without written evidence, wherever it is made.
* * * [T]he final domicile is more concerned in the policy to be insisted on than any other jurisdiction, and justifies it in framing its rules accordingly." (39 N.E., at p. 1027)
*598 Judge Conway, in his opinion in Rubin went on to say:
"There is yet another approach to the problem which tends to dictate the same result as all the foregoing: the `center of gravity' theory of conflicts of laws, discussed by the majority below. Under that theory the law of the state which has the most significant contacts with the matter in dispute will be applied. * * * It would seem that that approach was used to some extent by Justice Holmes in the Emery case, supra."
The Rubin and Emery cases involved the opposite situation from the present one, in that in those cases the contracts were valid where made but invalid where sued upon. Here, the contract is not invalid where sued upon, but is alleged by defendants to be invalid where made. This is a distinction without a difference since the policy of statutes such as New York's are clearly designed to protect domiciliaries of the state having such statute. The facts clearly demonstrate that New York has no interest whatsoever in the estate of Celeonor Woll or the parties to this litigation.
Mellk v. Sarahson, supra, involved an automobile negligence action in New Jersey between residents of New Jersey, the accident occurring in Ohio, and our Supreme Court refused to apply the Ohio host-guest statute, stating that the policies of the statute were not involved in a suit between New Jersey residents in the courts of New Jersey. See also Babcock v. Jackson, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279, 95 A.L.R.2d 1 (Ct. App. 1963). Similarly, in the present case the policies underlying the New York statute are in no way involved here. On the other hand, New Jersey itself has a strong policy interest in any suit involving the estate of its domiciliaries. Cf. Trustees of Princeton University v. Trust Co. of N.J., 22 N.J. 587 (1956).
It is the conclusion of this court that New Jersey law is applicable to the agreement between Matthew and Celeonor Woll for three reasons: (1) the substantial contacts *599 are in New Jersey; (2) New Jersey has a strong policy where the estates of its domiciliaries are involved, and (3) New York has no interest in this matter.
The law is well settled in New Jersey that one who has established the making by two others of an irrevocable agreement or compact to dispose of their estates or combined estates by mutual and reciprocal wills to his benefit, has a good cause of action in equity which will not interfere with the probate of a later will in violation of the agreement, but will enforce the contract against the estate of the survivor by impressing a trust upon the assets. In re Hand's Will, 95 N.J. Super. 182 (App. Div. 1967); Zabotinsky v. Conklin, 90 N.J. Super. 530 (Ch. Div. 1966); Tooker v. Vreeland, 92 N.J. Eq. 340, 342 (Ch. 1921), affirmed sub. nom. Tooker v. Maple, 93 N.J. Eq. 224 (E. & A. 1921); Minogue v. Lipman, 25 N.J. Super. 376, 389 (Ch. Div. 1953), affirmed 28 N.J. Super. 330 (App. Div. 1953); Gromek v. Gidzela, 36 N.J. Super. 212, 217 (App. Div. 1955); In re Kortvellessy Estates, 102 N.J. Super. 226 (App. Div 1968). Where the first party to the agreement does not revoke his will, and the surviving party accepts the benefits of the testamentary gift of the other, he becomes legally bound to carry out the obligation of the contract between them and his revocation is deemed a fraud against which equity will afford relief. Tooker v. Vreeland, supra, at page 346; Minogue v. Lipman, supra, at page 392.
The performance of the first decedent's portion of the agreement, i.e., bequeathing certain property to and the acceptance thereof by the second party, is deemed both sufficient consideration required to support such an agreement and sufficient part performance to take the contract out of the statute of frauds. Minogue v. Lipman, supra, at page 397. True, the consideration must be "certain and defined, equal and fair, and sufficiently proven," Tooker v. Vreeland, supra, at page 342, but
*600 "* * * [t]he consideration of the contract we readily find in the inducement held out by the one to the other to mutually testate, in the reciprocal gifts * * * and the execution of the contract * * * by his unrevoked will at the time of his death. And in the acceptance and the actual enjoyment of the gift * * * we also find that part performance which takes the oral contract out of the statute of frauds." Tooker, at page 345.
The Tooker court went on to say, however, that where mutual life estates are willed, regardless of any disparity in the property interests between husband and wife, a valid contract may be found, stating that "[e]quality of consideration is not essential to a binding obligation" (at page 345).
It is not necessary that there be a written agreement for the execution of mutual wills or that the mutual wills on their face purport to be contractual. While
"* * * reciprocal provisions indicate that they were the result of an understanding, * * * an understanding does not necessarily spell contract. The vital question is, was it agreed by them that the wills should remain irrevocable after the death of either? For the solution of this we must look to the extraneous testimony, keeping in mind that, to establish an agreement, the proofs must be clear and convincing. The contract may be found in an express promise, or inferred, as a conclusion of fact, from the circumstances surrounding the parties." Tooker, supra, at page 343.
Minogue, supra, 25 N.J. Super., at page 390. Likewise, it has been held the absence of direct proof of an express agreement to so testate is not fatal to the irrevocability of such a compact. Minogue, supra, 28 N.J. Super., at p. 339.
In Gromek v. Gidzela, supra, Judge Goldmann commented on the quantum of proof required to establish an oral agreement to make wills that should remain irrevocable:
"An irrevocable contract is sometimes found in the express oral promises made between husband and wife. It is sometimes erected on the basis of an implied promise, inferred as a conclusion of fact from the surrounding circumstances. In any case, a parol agreement to execute irrevocable mutual wills is subject to close scrutiny. Such an agreement is permitted to stand only when established by evidence that is cogent, clear and convincing, leaving no doubt in the court's mind as to the parties actually having entered into such an agreement." (36 N.J. Super., at p. 218)
*601 Applying the aforesaid standard of proof to the facts as I have found them to be, I conclude plaintiffs' proofs do "possess that quality" and clearly, cogently and convincingly establish that a testamentary arrangement, irrevocable in nature, was, in fact, made by the Wolls.
Were this court to apply New York law to the case, as urged by defendants, it is my conclusion the result would be the same as that already reached through the applicable New Jersey law. Defendants have cited numerous New York cases in which alleged contracts to make testamentary dispositions have been barred by the New York statute of frauds (17B McKinney's Consol. Laws of N.Y., Estates, Powers and Trusts Law, c. 17-b (E.P.T.L.), 13-2.1). E.g., Albin's Estate, 35 Misc.2d 322, 230 N.Y.S.2d 750 (Surr. Ct. 1962); Hunt v. Hunt, 55 App. Div. 430; 66 N.Y.S. 957 (App. Div. 1900), affirmed 171 N.Y. 396, 64 N.E. 159, 59 L.R.A. 306 (Ct. App. 1902); In re Ditson's Estate, 177 Misc. 648, 31 N.Y.S.2d 468 (Surr. Ct. 1941), and cases therein cited.
Defendants have apparently failed to recognize, however, that the New York courts, like our own, have developed a theory of constructive trust which is applicable to this class of cases. In Oursler v. Armstrong, 10 N.Y.2d 385, 223 N.Y.S.2d 477, 179 N.E.2d 489 (Ct. App. 1961), a husband and wife made mutual reciprocal wills. The husband had two children by this wife and two by a previous marriage. The wife's will provided that if she survived her husband, all property coming to her from her husband would go to all four children. After the husband's death the wife made a new will, later admitted to probate, which left all of her property to her two children alone. The other two children brought an action to impress a constructive trust on that portion of the wife's estate bequeathed to her by her husband.
The court, in a 4-3 decision, did not find sufficient evidence of an agreement either in writing or orally not to revoke the mutual wills to sustain a constructive trust, stating:
*602 "The law does not view the renunciation of the right to alter or revoke a will as a casual matter * * * and, regardless of whether the Statute of Frauds * * * controls this case, as quite possibly it does not, * * * the spirit of it as well as the decisional law requires clear evidence of the existence of a promise of this nature. * * *" (223 N.Y.S.2d, at p. 479, 179 N.E.2d, at p. 490)
"The existence of a promise, express or implied, is a vital necessity; * * * She had the legal right to dispose of her property by will as she chose, unless she obtained her deceased husband's estate on the strength of a promise that she would bequeath it equally among his four children, in which event only could a constructive trust come into being covering what she inherited from him. * * * Such a promise is not established by the mere confidentiality of the relationship between the persons involved." (Ibid., at p. 492)
Two weaknesses in the plaintiffs' evidence were stressed by the New York court. First, witnesses were able to testify only to general conversations which had no tendency to establish a promise by the wife. Secondly, the court stated:
"If the intention had been that Mrs. Grace Oursler was renouncing her power to alter or revoke her 1951 will, as regards the property which she stood to inherit from her husband, it is remarkable that it was not put in writing or even mentioned orally in joint consultation by so experienced and competent a lawyer as Mr. Ernst." (Ibid., at p. 492; emphasis supplied)
In the present case neither weakness in the evidence mentioned in Oursler is present. Witnesses testified to conversations with Celeonor Woll which were not of a general nature, but rather in which she referred specifically to her promise to Matthew and her agreement with him to leave everything to his sons, Albert and Willard. Furthermore, Markewich, the attorney who drew the reciprocal wills, testified clearly and convincingly, and the court finds as a fact, that in joint consultation Celeonor did unequivocally and irrevocably promise to her husband Matthew that she would leave their combined estates to his sons should Matthew predecease her.
Subsequent to the decision in Oursler, the New York courts have clearly distinguished an action for breach of contract requiring part performance referable to and consequent *603 upon the contract alone, from an action to impress a constructive trust.
In Reoux v. First National Bank of Glens Falls, 229 N.Y.S.2d 940 (App. Div. 1962), plaintiff brought an action against his mother's administrator alleging that his parents had made an agreement that the survivor of them would bequeath one-half of his estate to the son in consideration of the sons remaining and practicing law in their home town and helping his parents in the management of their business and properties. The theory of the action was two-fold. First, plaintiff alleged breach of oral contract; secondly, he alleged that the agreement gave rise to a constructive trust in his favor on one-half of his surviving mother's estate.
The complaint was dismissed by the trial court. The Appellate Division affirmed the dismissal as to the first ground of the complaint, stating that no "uequivocally referable" act to the alleged agreement could be shown as required as against the statute of frauds. However, the appellate court reversed as to the claim for a constructive trust, holding that it was possible to spell out an equitable cause of action to impress a trust upon one-half of such part of testatrix' estate as came to her under the will of her husband, executed by him in reliance upon their relation of confidence and upon their joint agreement with plaintiff and, by implication at least, with each other, equitable intervention being necessary to prevent her unjust enrichment by the retention of property obtained by her breach of trust. (Here Celeonor had in her own right only "a little money and some paintings," and no testimony was adduced to the contrary. Hence, we can assume that for all practical purposes her estate came to her from Matthew Woll.)
The Reoux case, decided subsequent to and citing Oursler, makes it clear that an action to impress a constructive trust pursuant to a promise to make an irrevocable will or make a testamentary disposition is distinguishable and aside *604 from the statute of frauds which applies to actions for breach of contract.
Additional force is given to the Reoux view by In re Buchler's Estate, 186 Misc. 306, 59 N.Y.S.2d 766 (Surr. Ct. 1945), affirmed 272 App. Div. 757, 70 N.Y.S.2d 139 (App. Div. 1947), where it is stated:
"The Statute of Frauds does not prevent the recognition of a constructive or secret trust. * * * In such a situation the result is attained not through the exercise of the dispensing power of a court of equity but because of an exception which has wrought itself by construction into the body of the statute.
The principle is firmly established in our jurisprudence that where one obtains a bequest or devise of property upon his representation that he would devote it to the use of one who would otherwise be an object of the testator's bounty and he thereafter refuses to put it to the use promised, a court of equity will enforce the obligation by impressing a trust upon the property in favor of the intended beneficiary." (59 N.Y.S.2d, at pp. 772-773; emphasis added)
It is clear to this court that under the facts of the instant case, even if New York law were applicable, a constructive trust would be impressed on the assets of the estate of Celeonor Woll in favor of Albert Woll and the estate of Willard Woll.
In view of all the foregoing, it is the court's conclusion that judgment be entered providing that the assets of decedent Celeonor Woll's estate, both real and personal, after the payment of debts, taxes and allowances, are impressed with a trust in favor of plaintiffs J. Albert Woll and Virginia Woll, executrix of the estate of Willard Woll, deceased, by way of specific performance of the contract entered into by Celeonor and Matthew Woll. Defendant Citizens First National Bank of Ridgewood will continue to serve as executor of the estate of Celeonor Woll and will render its accounting in due course in the Bergen County Court, under whose jurisdiction the Celeonor Woll estate is being administered. See Sellyei v. Lecso, 28 N.J. Super. 593, 603-604 (Ch. Div. 1953).